UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WADE CANELL,

Plaintiff,

v.

BRET AUGER, et al.,

Defendant(s).

Case No. 1:25-cv-13352

Honorable Robert J. White

**ORDER AND OPINION OVERRULING OBJECTIONS, ADOPTING AND MODIFYING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, AND GRANTING THE DEFENDANT'S MOTION TO DISMISS**

## I. Introduction

Plaintiff Wade Canell filed his amended complaint raising a wide variety of claims, both under state law and under 42 U.S.C. § 1983, against several Defendants including the City of Cheboygan, employees of the City of Cheboygan Police Department (Defendants Bret Auger, Scott Rifenberg, Brenda Temple), and one Michigan State Police Officer ("MSP"), Samuel North. Plaintiff believes that the Defendants violated his constitutional rights when they failed to timely respond to what he calls a "documented financial cybercrime" involving the theft and laundering of his cryptocurrency wallet. (ECF No. 25, PageID.262).

Defendant North alone filed a motion to dismiss, which is at issue today, so the Court focuses on the claims alleges against him. These claims include (1) First Amendment retaliation, (2) interference with his right to petition the government for redress of grievances, (3) Fourteenth Amendment deprivation of property without due process, (4) denial of access to courts, (5) civil conspiracy to deprive constitutional rights, (6) conversion, (7) gross negligence, and (8) for declaratory relief.

Before the Court is Magistrate Judge Patricia T. Morris' report and recommendation dated March 4, 2026, (ECF No. 32). She recommended that the Court grant Defendant North's motion to dismiss, however, it also recommends dismissing the Plaintiff's claims of conversion, denial of access, and gross negligence against all Defendants, despite none of the other Defendant's moving to dismiss with Defendant North. (ECF No. 32, PageID.457).

The Plaintiff timely objected to the report and recommendation pursuant to Fed. R. Civ. P. 72(b)(2). (ECF No. 34) The other Defendants, but not Defendant North, filed a response, (ECF No. 35), to which the Plaintiff filed a reply (ECF No. 36).

For the following reasons, the Court will (1) overrule the Plaintiff's objections, (2) adopt in part and modify in part the Magistrate Judge's report and

recommendation, and (4) grant Defendant North's motion to dismiss and dismiss him from the case.

## II. Background

Since Plaintiff does not object to Magistrate Judge's factual summary, the Court finds that the recitation of the underlying allegations is accurate, and it will adopt the Magistrate Judge's summary of those allegations as they appear in the report and recommendation. (ECF No. 32, PageID.458–61).

## III. Legal Standard

District judges review *de novo* any part of the magistrate judge's recommended disposition "that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

## IV. Analysis

### *A. Objection Related to Defendant North's Motion to Dismiss*

Plaintiff raises four separate objections, but only one relates to Defendant North's motion to dismiss. That objection will be addressed first.

Plaintiff argues that his First Amendment retaliation claim against Defendant North pleaded enough factual allegations to survive a rule 12(b)(6) motion. (ECF No. 34, PageID.477–78). He is incorrect.

A First Amendment retaliation claim has three parts: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would

deter a person of ordinary firmness from continuing to engage in the conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Richards v. Perttu*, 96 F.4th 911, 917 (6th Cir.), *cert. granted*, 145 S. Ct. 119 (2024), and aff'd, 605 U.S. 460, 145 S. Ct. 1793, 222 L. Ed. 2d 108 (2025) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

Plaintiff claims that the pleadings indicate that Defendant North "affirmatively inserted himself, promised potential escalation, directed Plaintiff back to an officer Plaintiff repeatedly advised was not effectuating time-sensitive preservation, and then withheld basic case-status and escalation documentation while offering assurances that Plaintiff was receiving an 'above average' response." (ECF No. 34, PageID.478).

The Magistrate Judge, in reviewing these facts and others, wrote that "[i]t does not appear North took any adverse action against Plaintiff, let alone one sufficient to deter Plaintiff." (ECF No. 32, PageID.468). The Magistrate Judge is correct. Even taking the first prong as satisfied, the Plaintiff is unable to show that an adverse action was taken that would deter a person of ordinary firmness. As the Sixth Circuit has explained, the standard in prong two is "an attempt to balance the tension between two propositions: First, the injury suffered need not be great because there is no justification for harassing people for exercise of their constitutional rights; but

second, a constitutional tort—like any tort—requires injury, and allowing constitutional redress for every minor harassment may serve to trivialize the First Amendment." *Mattox v. City of Forest Park*, 183 F.3d 515, 521 (6th Cir. 1999) (citing *Thaddeus–X*, 175 F.3d at 396–97).

The pleaded facts indicate that what Plaintiff suffered was, at best, a minor harassment. The pleadings indicate that (1) Defendant North contacted him during the investigation regarding the alleged cryptocurrency theft, (2) represented that MSP possessed tools that could distinguish whether there was a legitimate exchange of cryptocurrency wallets or not, (3) directed Plaintiff back to the City of Cheboygan police department indicating that they were his "best bet," (4) reviewed materials that Plaintiff sent in regarding his case but informed him that digital asset cases were a "weakness within law enforcement" and that he was receiving an "above average" law enforcement response, and finally (5) failed to provide the Plaintiff with an MSP case number or written confirmation of internal escalations of his case or other preservation efforts. (ECF No. 25, PageID.276 –77). These facts are indicative of seemingly normal policing procedures, not adverse actions meant to deter Plaintiff.

Indeed, Plaintiff was not deterred. Instead, he later contacted City of Cheboygan Police to obtain "victim-status information" (*id.* at PageID.277–78), and at another point he sent "certified letters to the Mayor, the City Manager, and City Counsel members providing written notice of the theft, the documented laundering

activity, and Plaintiff's allegations concerning the [City of Cheboygan Police Department's] inaction and handling of the victim inquiry," (*id.* at 283). He would also appear in person at Cheboygan City Counsel meetings to deliver public statements regarding the alleged crypto-theft. (*Id.*). The pleadings also indicate that Plaintiff continued to email or contact various Defendants about his case over the next few months. (*Id.* at PageID.284–89). Thus, Defendant North's actions, even if they could be described as adverse, very clearly would not be a deterrent to a person of ordinary firmness, as evidenced by Plaintiff's repeated efforts to contact the several Defendants regarding his case. This objection is overruled.

*B. Objections Related to the Other Defendants*

Next, Plaintiff raises two objections to the Magistrate Judge's recommendation that the Court *sua sponte* dismiss the conversion, denial of access to the courts, and gross negligence claims against all Defendants, including the one's that did not move in Defendant North's motion to dismiss. But both objections essentially argue the same thing, that the Magistrate Judge's reliance on 28 U.S.C. § 1915(e)(2) to dismiss these claims against the other Defendants is procedurally inapplicable because he paid the filing fee.

Plaintiff has a point. The Magistrate Judge recommended *sua sponte* dismissal of the three aforementioned claims under § 1915(e)(2). At first blush, it appears that the Magistrate Judge may be invoking § 1915(e)(2) requirement that a court "shall"

dismiss a case "at any time" if the court determines that an action is frivolous, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. *See id.* However, the Sixth Circuit has been clear that § 1915(e)(2) only applies to Plaintiff's proceeding *in forma pauperis*. *Benson v. O'Brian*, 179 F.3d 1014, 1015 (6th Cir. 1999) ("We conclude that § 1915(e)(2) applies only to in forma pauperis proceedings."). And the Plaintiff paid the filing fee for his case. So, the Magistrate Judge's dismissal of the Plaintiff's conversion, denial of access to the courts, and gross negligence claims was improper under § 1915(e)(2).

But the remaining Defendants, Rifenberg, Temple, Auger, and the City of Cheboygan (the "Cheboygan Defendants"), filed a response to Plaintiff's objections arguing, among other things, that the Court has the authority to extend dismissal of claims to Defendants who have not moved for dismissal, but who are similarly situated to the movant. (ECF No. 35, PageID.488). They are correct.

"A court may grant a motion to dismiss even as to non-moving defendants where the nonmoving defendants are in a position similar to that of moving defendants or where the claims against all defendants are integrally related." *Bonny v. Society of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993); *see also Loman Dev. Co. v. Daytona Hotel & Motel Suppliers, Inc.*, 817 F.2d 1533, 1537 (11th Cir. 1987); *Nirenberg v. Couzens, Lansky, Fealk, Roeder & Lazar, P.C.*, No. 24-CV-10619, 2025 WL 2976842, at *21 (E.D. Mich. Oct. 17, 2025); *Lee v. Flint Cmty. Schs.*, No.

22-CV-13134, 2023 WL 6797002, at *2 (E.D. Mich. Oct. 13, 2023). This rule even extends to non-moving defendants who never appeared in the action. *See Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742-43 (9th Cir. 2008) ("we have upheld dismissal with prejudice in favor of a party which had not appeared, on the basis of facts presented by other defendants which had appeared.").

So, if the Court finds that the Cheboygan Defendants are all in the same position to the moving Defendant, Defendant North, it may dismiss the claims against every Defendant. And at least as it pertains to the conversion and denial of access to the courts claims, all Defendants are in the same position.

Starting with conversion, it is defined as "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 391, 486 N.W.2d 600, 606 (1992). There are three elements to a common-law conversion claim: "(1) a distinct act of dominion; (2) wrongfully exerted; and (3) over another's personal property. The act is wrongful when it is inconsistent with the ownership rights of another." *Kalitta Air, LLC v. GSBD & Assocs., LLC*, No. 12-CV-13554, 2013 WL 3270871, at *5 (E.D. Mich. June 27, 2013) (citing *Check Reporting Servs., Inc. v. Mich. Nat'l Bank—Lansing*, 191 Mich.App. 614, 626, 478 N.W.2d 893 (1991)).

Plaintiff pleaded that he voluntarily sent a self-compiled forensic report, which he has called the "DarkCrypto" report (the "Report"), seemingly as evidence of wrongdoing and to assist the Defendants in their investigation. (ECF No. 25, PageID.266). The Report was at least sent to Defendants North and Auger directly. (*See id.* at PageID.276). However, it is unclear from the pleadings if the other Defendants ever had direct access to the Report or not. Regardless of which Defendants ultimately possessed the Report, the pleadings are indicative that Plaintiff voluntarily submitted the Report to law-enforcement officials to assist in the investigation of his stolen cryptocurrency wallet. (*See* ECF No. 25, PageID.276-81). And seemingly the Defendants only reviewed, shared, and retained the Report in connection with that investigation. Those allegations cannot establish that any one Defendant exercised control over the Report in a manner inconsistent with Plaintiff's ownership rights. This claim necessarily fails against all Defendants.

Next, the Plaintiff's denial of access to the courts claims. Here, too, the Defendants are all similarly situated.

To start, the Supreme Court has recognized a constitutional right of access to the courts whereby a plaintiff with any non-frivolous claim has the right to bring that claim to a court of law. *Flagg v. City of Detroit*, 715 F.3d 165, 173 (6th Cir. 2013) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 n. 12 (2002)). Right of access is "ancillary to the underlying claim, without which a plaintiff cannot have suffered

injury." *Christopher*, 536 U.S. at 415. Put another way, the constitutional right of access does not create any substantive rights in itself, so a plaintiff must have an "an arguable, nonfrivolous underlying cause of action." *See Flagg*, 715 F.3d at 173.

A denial of access to the courts claim may either be "forward-looking" or "backward-looking." *Id*. "In forward-looking claims, the plaintiff accuses the government of creating or maintaining some 'frustrating condition,' that stands between the plaintiff and 'the courthouse door.'" *Id.* (quoting *Christopher*, 536 U.S. at 413). On the other hand, in backwards-looking claims "the government is accused of barring the courthouse door by concealing or destroying evidence so that the plaintiff is unable to ever obtain an adequate remedy on the underlying claim." *Id.* (citing *Christopher*, 536 U.S. at 413–14).

Plaintiff argues that "Defendants intentionally interfered with [his] right to petition and seek redress by restricting communications and access to decision-makers, rerouting or blocking victim inquiries, enforcing directives limiting contact with City officials, and otherwise isolating [him] from ordinary governmental channels for redress." (ECF No. 25, PageID.293). Although Plaintiff alleges that the Defendants restricted his communications with City of Cheboygan officials and blocked his inquiries, these facts are properly construed as alleging a backwards-looking claim because the injury alleged is not that the Plaintiff is prevented from filing or pursuing legal action. Rather, Plaintiff alleges that the Defendants' past

conduct caused the "loss of time-sensitive recovery opportunities," "the inability to obtain or preserve evidence," and impairment of future legal remedies. (ECF No. 25, PageID.293).

And the Supreme Court has held that "a backward-looking denial of access claim requires the plaintiff to identify 'an underlying cause of action for relief that the plaintiff would have raised had it not been for the deception alleged,', and to seek relief that would be unavailable otherwise." *Flagg*, 715 F.3d at 173 –74 (quoting *Christopher*, 536 U.S. at 405–06) (citations omitted). And Plaintiff has not pointed to any cause of action that was prevented him by any Defendants' actions. Indeed, he alleges only that the Defendants' conduct caused him to lose his "recovery opportunities" and impaired his ability to preserve evidence. (ECF No. 25, PageID.296). But the Supreme Court's jurisprudence indicates that more is required. Plaintiff identifies neither an underlying cause of action that was lost nor the remedy that has become unavailable because of the Defendants' conduct. Accordingly, Plaintiff fails to plausibly allege that any of the Defendants foreclosed his access to the courts.

But turning now to the Plaintiff's gross negligence claim, it should not be denied as to the Cheboygan Defendants. To explain an overview of state negligence law and the Government Tort Liability Act ("GTLA") are in order.

First, under Michigan law, gross negligence is not an independent cause of action. *See Bletz v. Gribble*, 641 F.3d 743, 756 (6th Cir. 2011). Instead, it "is a prerequisite to avoiding that official's statutory governmental immunity" from negligence claims. *Id.* In other words, "[f]or negligent torts, the governmental employee is" entitled to governmental immunity unless his "conduct amounted to gross negligence that was the proximate cause of the injury or damage." *Latits v. Phillips*, 298 Mich. App. 109, 118 (2012) (cleaned up).

But just because gross negligence is not a cause of action does not mean that a plaintiff has failed to state a claim. "The Federal Rules of Civil Procedure do not require overly formal pleadings. A claim for relief is validly made if the complaint provides allegations: (1) establishing the court's jurisdiction; (2) showing that the plaintiff is entitled to relief; and (3) demanding such relief." *Olmetti v. Kent Cnty.*, No. 1:20-CV-395, 2020 WL 7777970, at *4 (W.D. Mich. Dec. 31, 2020) (citing Fed. R. Civ. P. 8(a)). So, a claim won't fail just because the plaintiff misnames a cause of action. *Id.* Therefore, just because "gross negligence" is not a cause of action, it does not mean the Plaintiff's claims fail, because "negligence" is.

Yet here is where things become problematic for Plaintiff. In his motion to dismiss, Defendant North raised immunity under the GTLA. (ECF No. 29, PageID.349–52). "Michigan law provides governmental officers and employees with immunity when the employee (a) 'is acting or reasonably believes he or she is

acting within the scope of his or her authority,' (b) '[t]he governmental agency is engaged in the exercise or discharge of a governmental function,' and (c) the challenged 'conduct does not amount to gross negligence that is the proximate cause of the injury or damage.'" *Krawczyk v. Twp. of Hagar*, 673 F. App'x 508, 512 (6th Cir. 2016) (quoting Mich. Comp. Laws § 691.1407(2)).

The Magistrate Judge pointed out that Plaintiff alleged that the harm he suffered was the "the loss of the only viable recovery pathway" for his stolen digital assets. (ECF No. 32, PageID.469 (quoting (ECF No. 31, PageID.455))). And, as the Magistrate Judge correctly concluded:

> It is without doubt that the theft of Plaintiff's digital assets was the proximate cause of his injury. Whether Defendants acting more quickly in their investigation would have provided an easier avenue to recovery of the stolen assets is questionable. Even assuming it is true, however, Defendants still would not be the proximate cause of Plaintiff's injury.

(*Id.* at PageID.469–70).

Naturally, this claim fails against Defendant North, however, what about the Cheboygan Defendants? Seemingly, they are similarly situated to Defendant North, however, there is a catch. The Michigan Supreme Court has held that it is a governmental defendant's job to raise the affirmative defense of governmental immunity and to prove their entitlement to it. *See Odom v. Wayne Cnty.*, 482 Mich. 459, 479 (2008) ("Accordingly, the burden continues to fall on the governmental employee to raise and prove his entitlement to immunity as an affirmative defense.").

None of the Cheboygan Defendants raised governmental immunity as an affirmative defense because they did not file as part of defendant North's motion to dismiss. And the Magistrate Judge never reached the merits of the Plaintiff's negligence claim because she concluded that Defendant North had governmental immunity. So, while governmental immunity may at some point apply, the Court will go no further than addressing the immunity arguments as they apply to Defendant North. Thus, the Plaintiff's "gross negligence" claim should be dismissed as to Defendant North only.

*C. Objection Related to Denied Motion to Amend*

Finally, Plaintiff argues that he should have been granted leave to amend to resolve any deficiencies in his pleadings. (ECF No. 34, PageID.478). But, as the Magistrate Judge noted, Plaintiff does not provide his proposed amendment or detail how he would amend his pleadings to sufficiently state a claim. (ECF No. 32, PageID.470).

"Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend shall be freely given when justice so requires." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010). But leave to amend a complaint "may be denied where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party for virtue of allowance of the amendment,

*futility of amendment*, etc.'" *Id.* (emphasis in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Department of Treasury, State of Michigan, Revenue Div.*, 987 F.2d 376, 382–83 (6th Cir.1993).

But "implicit in [Rule 15(a)] is that the district court must be able to determine whether 'justice so requires,' and in order to do this, the court must have before it the substance of the proposed amendment." *Roskam Baking Co., Inc. v. Lanham Machinery Co., Inc.*, 288 F.3d 895, 906 (6th Cir. 2002) (citation omitted). Without viewing [a] proposed amendment, it [is] impossible for the district court to determine whether leave to amend should [be] granted." *Spadafore v. Gardner*, 330 F.3d 849, 853 (6th Cir. 2003). Because the Plaintiff has not attached his amended complaint as part of his request to amend, the Court cannot determine whether leave should be granted, and this objection is overruled.

Accordingly, **IT IS ORDERED** that the Plaintiff's objections to the Magistrate judge's report and recommendation (ECF No. 34) are **OVERRULED**.

Further, it is **ORDERED** that the Magistrate Judge's report and Recommendation (ECF No. 32) is adopted in part and modified in part.

Further, it is **ORDERED** that Defendant North's Motion to Dismiss (ECF No. 18) is **GRANTED**.

Further, it is **ORDERED** that Defendant North is **DISMISSED** from the case.

Further, it is **ORDERED** that Counts VI and X are **DISMISSED** as to all Defendants.

Dated: July 31, 2026

s/ Robert J. White
Robert J. White
United States District Judge